General Hospital Corporation v. Esoterix Genetic Laboratories, LLC Good morning, Robert Steiner for Defendant, Appellant, and Cross-Appellee Esoterix and Defendant, Cross-Appellee Laboratory Corporation of America Holdings. Thank you. Attorney Nash, could you introduce yourself to the court, please? Good morning, Your Honors. Doug Nash on behalf of the appellees, the General Hospital Corporation, and Dana-Farber Cancer Institute. Thank you. Judge Lynch, if you're ready, we'll call the next case and IT can begin recording. Please do. Thank you. The next case today is the General Hospital Corporation et al. v. Esoterix Genetic Laboratories, LLC et al. Appeal Number 20-2126 and 20-2149. Attorney Steiner, please introduce yourself for the record and proceed with your argument. Good morning, Robert Steiner for Defendant, Appellant, Cross-Appellee Esoterix and Defendant, Cross-Appellee Laboratory Corporation of America Holdings. With the court's permission, I'd like to reserve two minutes for rebuttal. You may. Thank you, Your Honors. The district court erred in this case when it construed release as limited to accrued causes of action as of that release's effective date. The release here, by its plain language, is far broader than that. It includes not just causes of action, but also things like rights, obligations, and promises. And as of the release's effective date, MGH and DFCI had a right to testing royalties based on the tests that had been invoiced to date. And they had a right to sub-right license royalties based on sub-license income that EGL had received as of that date. All before those payments were due to be paid on August 15th. The district court made a further error when it concluded that these rights, obligations, and promises could not have been released by the plain language of the release because they couldn't be calculated. That is wrong based on the text of the Master License Agreement, and it is also irrelevant. The amounts can be calculated, and even if they couldn't be calculated, the release wasn't limited to just some certain. On the first point you made, could you just run through textually how you would get us to the conclusion that you had a right to the royalty before the payment was due? Well, as they did. That they did. That they had a right. Yes. So the language of the release, I'm not sure you're talking about the language of the release of the Master License Agreement, Your Honor. Well, I think what were you referring to? So what I was referring to, Your Honor, is the breadth of the release as well as the language of the Master License Agreement. So under both of those, how do we get to the conclusion that they had a right to it prior to the payment being due? Sure. Well, based on the language of the Master License Agreement, Your Honor, Provision 4.6 of the Master License Agreement says that sub-license royalties are payable at a certain percentage of the amount that EGL received. Then 4.6d refers to any amounts required to be paid, referring to those sub-license royalties. That these amounts are required to be paid at a date certain, which is 45 days after the end of a reporting period, doesn't mean that they didn't have an accrued right. Why? What is your support for that proposition? That's what I'm missing. Well, because if you're looking at just the sub-license royalties, which I think is the easiest way to analyze the agreement, the agreement specifically says in 4.6, it specifically talks about when that liability becomes due. It becomes due as money is received by EGL. It's just a matter of convenience, Your Honor, and this happens in all commercial transactions, that the accumulated payment is ultimately made in a lump sum after the effective date. But Your Honor, even if I'm wrong and the district court is right, and for whatever reason, the sub-license royalties and the testing royalties are not calculable under the Master License Agreement, that shouldn't matter. No, no. I'm not talking about calculable. That's your second argument. Your first argument is about when they had a right to something. The district court is saying there's just no right to anything until the date of payment, and I'm still trying to figure out why you say that's wrong. Just textually, what in the contract says that's wrong? Well, I would look to, among other things, 10.7, the termination provision. The termination provision makes clear that the amounts are calculable at any time during a reporting period. If you look at 10.7, it says that if a termination occurred prior to the end of a reporting period, the amounts immediately become due and payable. So these amounts become calculable at any point in time. Does it say amounts? I'm sorry. 10.7, Your Honor, talks about the amount that is due and payable in 10.7 of the Master License Agreement. Okay. So, but the point... I'm sorry. How does that help you? That would help me. Well, because what it illustrates, Your Honor, is that there is an ability throughout the reporting period to calculate the liability that EGL has to MGH and DFCI at every point in that reporting period. And so merely because, and you can think of a common example, Your Honor, a utility bill. If you pay your utility bill at the end of a month, it doesn't mean that if in the middle of that month, you enter into an agreement with the utility company for a release of your obligations to it, that the utility company can come back to you and say, well, hey, you owe us for that period because you didn't actually have to pay the money to us until 15 days or 45 days later. Mr. Steiner, as I understand it, your basic point is that the right to payment, or look, put another way, the obligation to pay arises when the service giving rise to the royalty is performed. That's exactly right, Your Honor, and I think if you're... Okay, that's got nothing to do with calculation, whatever calculation occurs. It doesn't have to do with calculation, which was to my second point, which is that even if you couldn't calculate the amount, the precise amount, the right, the obligation, the promise still exists. If I enter into a mortgage with a bank, take out a mortgage, and the first payment is due a year from the mortgage date at prime, I can't calculate how much that is going to be six months down the line, but if I terminate the mortgage at that date, sell the secured property, et cetera, there's no question that the bank has a right to payment. That's exactly right, Your Honor. I had a more simple example in mind, which is that if I loaned my colleague a hundred US dollars and I said, I'm going to pay you in a week, and then a day later, she releases me from all rights, obligations, and promises, I've been released from the obligation to pay that money. That doesn't change if I agree to pay her in euros at an exchange rate as of the date the payment is due. The right, the obligation, and the promise all exist, and it is not limited, and this is where I think the district court made the critical error. It's not limited to strictly causes of action. When you look at the law of releases in Massachusetts, which is very broad, it is very clear that you can release unaccrued contingent obligations. Five minutes. If you look at the Act case, Your Honor, in the Act case, there was no claim of malpractice that existed at the time that the release was signed, but the events giving rise to the claim had occurred. If you look at the Warner case... Could you just go back to the example that Judge Selye gave you? It's very helpful in illuminating it. Is there just a, if I wanted to write an opinion to adopt that position, could you point me to a Massachusetts law case that would tell me it's correct? I think the Act case, the Warner case, I think the... Not about the release, but about interpreting the idea that when a contract is written in the way this one is written, we treat the promise, creating an obligation on the contract to be enforceable prior to the payment date. I think the Act case is fairly broad. I think the recite the Tenth Circuit case, I believe the Vickas case, which under Illinois law is much more narrow than Massachusetts law, which provides specifically that releases can be broad and can release contingent liabilities, even liabilities with unknown amounts that are due. Those would be some of the cases I would point you to, Your Honor. Can I ask you a question that's off track, but I don't want to forget to ask this of both sides? I've looked at the record here, and neither the full master license agreement nor the full settlement agreement appear to be part of the record, even part of the sealed record. Our counsel on both sides are representing to the court that we have in the record, whether in redacted or unredacted form, whether sealed or not sealed, we have in the record those parts of the master license agreement, the settlement agreement that we need to fairly decide this case. Yes, Your Honor, and I think counsel for the appellee will agree with me because the parties worked together to come up with the redacted record. I understand that there may be reasons for redaction, but I thought we ought to confirm that on the record. Yes, Your Honor, the parties worked together in order to do that. Is it the case that your understanding is we don't have the definition of royalty that's in the agreement? I am not sure about that, Your Honor. I'd have to actually look at the master license agreement to see whether you have it. I believe you have all the relevant provisions. Is your function to decide in the case even if the definition of royalty is redacted in a way, even in the sealed filing? Yes, I am, Your Honor, and again, I go back to this premise, not to belabor it, that the exact method of calculation and when it can be calculated is really irrelevant given the breadth of this relief. The district court would have had to actually reverse Massachusetts law on exclusion of items from releases. The district court would have required EGL and the parties to have agreed that not only are you releasing all rights and obligations arising from the master license agreement, which these clearly do, but you would have had to specifically call out those rights and obligations for them to receive royalties even if payment was not yet due. And I would submit to the court that you can simply stop after Romanette 3 where it says the master license agreement. They are releasing obligations, promises, and rights which arose out of or which may have arisen out of the master license agreement, known, unknown, suspected, or unsuspected. That is by definition a broad release, and under Massachusetts law, they would be required to carve out an exception if, in fact, they wanted an exception. And we did not agree to an exception, and so there is none that is in the record. If I could just briefly turn to the parole evidence issue, I would just point, Your Honors, to the fact that they don't point to any ambiguity in the agreement. There's nothing in the language which is unclear. The language is clear and unequivocal in its scope, and, of course, there is an integration clause in the agreement. I point the court to the Radowsky case, which says... Counsel, that's time. A release time. Thank you. You have some time reserved. Thank you. We'll hear from your opponent. Attorney Steiner, please mute your audio and video. Attorney Nash, please unmute your audio and video, introduce yourself for the record, and proceed with your argument. Good morning, Your Honors. May it please the court, Doug Nash on behalf of the Appellees, the General Hospital Corporation, and Dana-Farber Cancer Institute. I want to start, Your Honors, with... Well, Mr. Nash, can I ask you to start with the question I asked, Mr. Steiner? Are you content to have us decide this case on the agreement, on the master license agreement and settlement agreement, the portions of it that we have in the sealed and unsealed records? Correct. I confirm that. Okay. Thank you. So I'd like to start with the release language itself and then talk a little bit about what the district court found with respect to the license agreement and how those two things interconnect with one another. The release provision in the settlement agreement is entirely backward-looking. It's all about the past, and the plain language of the release says things have to have arisen before the effective date. And then specifically with respect to the payment of royalties, the release talks about the payment of past royalties. And if you look at, in particular, Esoteric's reply brief, Your Honors, when they try to characterize this right or this obligation that they're saying that Mass General and Dana-Farber released, when they try to characterize it, they add two modifiers in their reply brief, and they characterize it as a right to a future payment or the obligation to make a subsequent payment. So to get to their argument, they have to transform a release, which is unquestionably looking backwards, before the effective date, past royalties. They have to transform it into covering rights and obligations related to the future. Counsel, with respect, I think that that argument misses the thrust of your opponent's argument. As I understand it, the thrust of the argument is the release is to be broadly read under Massachusetts law. It is not merely rights. It is also obligations. It is also promises. And that this issue of whether the royalty, the two different types of licensed royalty payments, were in fact due is irrelevant. The question really has to do with whether there was a right, obligation, or promise that was released. So, you know, it's good litigation tactics to attack an overly broad argument by your opponent, but that's not their basic argument. Well, okay. I understand that. And let me see if I can meet their argument more head-on than your honor. So, the question is then, as of June 27th, 2017, was there a right? Was there an obligation? Was there a promise that existed that was capable of being released? I'm sorry, what do you mean by that phrase, that was capable of being released? First, that's not in the text. Had it arisen by the effective date of June 27th? The language in the release is arisen. That's what I meant by that. But thank you that you're right to make me clarify it. What I meant by that was, is had a right, an obligation, or a promise arisen before that effective date? And the district court judge explicitly made a finding. My brother made the argument. Excuse me, the district court judge made no findings. This was decided on summary judgment. Okay. All right, but the language of findings implies a bench trial, and there was no such trial here. This is summary judgment, so we're looking at the facts as they stand. So, fair enough. The district court judge concluded in the decision on summary judgment that the obligation arose on August 15th, 2017. And the district court got to that conclusion by looking at the totality of the license agreement that she had before her. And she went through methodically in her decision and pointed out that when you look at the two sections that are at issue here, 4.5 and 4.6, the two royalty sections, when you look at that, with respect to 4.5, they're based on the total net sales for an entire reporting period. And so, when the district court was looking to try to understand whether there was any obligation or promise or right that had arisen on June 27th of 2017, she correctly concluded, did the district court, that there was no such right that had arisen as of that date. That by the express and explicit terms of the license agreement, that right to payment, that promise to make the payment, that obligation to make the payment, arose 45 days after the end of the reporting period, which in this case was August 15th of 2017. That is what the district court concluded as a matter of law by looking at the master license agreement and reading it in the context of the release. That reads out of the agreement any interpretation that the settlement agreement released or discharged a right to future payment or an obligation to make a future payment. And there's nothing in the broad language of the release which would impel me, at least on a preliminary reading, to insert such a condition that wasn't expressed. I mean, you're not arguing as a legal matter that you can't release a right to a future payment. No, you can. The question is did you? Yeah, that's right. So we've got to look at the language of the release. And I don't see anything in the language of the release that cabins the language in the way that you are now suggesting. I understand what the district court's conclusions were. Yes. I would submit, Judge Salia, that the language in the release about releasing the payment of past royalties is entirely consistent with what I'm saying and is entirely consistent with our argument. Also consistent with our argument, Your Honor... I'm sorry, counsel. You just lost me. Are you back to your arisen argument? Why can't an obligation for a future payment have arisen prior to the date of the release? It could have. Our position is that it didn't based on all the conclusions and the reasons of the district court. Let me understand that because I thought you were... What is the textual basis for concluding that there had not even been a promise for a future payment under the license agreement, not the release? You're not taking the position that there was no promise to make a future payment, are you? It's an executory contract, Your Honor, that's still in force today. There was an ongoing royalty obligation. There was no promise, there was no obligation to make a payment before the effective date. By that, I mean the payment had to be made... Just to test it out, your position is under the contract if there had been no termination clause and they had terminated midway, you would not be entitled to anything for all the uses of your product that had been made. Is that right? No. In fact, the exact opposite. I think it supports our argument, the termination clause, that is, Your Honor, without... Without the termination clause. If there was no termination clause... Your position is that the way it was written would mean that if there had been termination, you would be out all the money you would have otherwise been owed because there's no owing of anything until the date of payment. I think what would have happened in that case, Your Honor, is that on the same schedule, that you would have waited to the end of the reporting period, waited the 45 days at the end of the reporting period, and the payment due would have been for the portion of the reporting period that occurred prior to termination. But doesn't that suggest, then, that there was a promise for that future payment at the moment that the service was used? No, the contract provided for a due and payable amount... 45 days at the end of a reporting period. That promise, that obligation, that right, however you want to characterize it using the words of the release, that all arose 45 days after the cutoff of the release. So, had something gone wrong, you could not have sued or filed a claim in bankruptcy until 45 days after a particular obligation became due? Is that really your position? And you had no quantum merowit claim of any sort? I think a quantum merowit claim and a breach of contract claim would have been ripe and capable of being brought when the payment is said to be due and payable. Until they missed the payment, there's no breach of contract claim, whether it's in bankruptcy court or wherever. I don't believe there's a quantum merowit claim. Excuse me, you're again referring to the cause of action language, which under Massachusetts law of releases is not the appropriate test. See, once the contract terminates, you can't then be enforcing the contract. The quantum merowit claim would be a basis that, well, this doesn't seem right. They used my product. I had some expectation they would pay me for the use of it. And so I can recover from the fact of that usage. And we're no longer on the contract. It might be that you didn't have any reliance interest to get your quantum merowit until 45 days passed, just given expectations and the like. But that's a different argument that there was simply no obligation, no promise that you'd ever be paid for the use. There was an expectation, Your Honor, that we would be paid for the use. But the formulas in the license agreement are such that there's no way to know whether or not there'd be any payment and therefore a right to a payment until you get to the end of the reporting period. Because one of the things with respect to... How can you say there's no way to tell whether you'd get any payment? On the sub-license fees, for example, your company receives a flat 50%. Correct. If they've received a dollar, you get 50%. You know that. One of the things, though, Your Honor, is that you have to back out the annual fee that is deductible from the amount payable under 4.6, the sub-licenses. You have to have, in order for there to be anything due, a right to payment, the sub-license fees would have to be in excess of that annual fee, which is the deduction off of that payment. You can't know that based on how the license agreement is constructed. Even then, there's an obligation to pay. You're just saying there may be credits due against that obligation, which may set off the obligation to the amount of the annual fee, etc., etc. But that doesn't go to the question of whether I, as a licensee, can use your product without incurring an obligation to make a future payment. But that deduction or credit could have completely, it was possible for it to completely wipe out the payment. It could have, but it doesn't wipe out the fact that there is an obligation to make whatever payment is due, even if that turns out to be zero because of the operation of these other clauses. Tell me if I have it right. You're not challenging, I take it, Judge Selye's hypothetical about the mortgage. In other words, you don't insist that any contract that has a date of payment in it gives rise to no obligation prior to the payment. You're not taking that position. You're taking the position, though, that you can structure a contract so that the date of payment, in effect, becomes a conditioned precedent of the contract, correct? You're saying that as between those two possibilities, that the reading of this contract is a date of payment with a conditioned precedent. Am I right? Correct. How do we decide in the context of this that you're right and this isn't better read like we would probably read most contracts to think that it's a little strange to say that the date of payment isn't just a term but is itself a conditioned precedent? What helps me figure out the answer to how do I resolve between those two possibilities? Counsel, that's time. May I answer your question, Your Honor? When you answer it, if you could cite a case that would tell me the answer to that would be helpful. I was going to cite the license agreement, Your Honor. I don't think either side cited a case on all fours here. Every license agreement in those cases was a little bit different. With respect to the license agreement, I would point you to the provisions of 4.5 and 4.6, specifically 4.6D, and I believe it's 4.5C, which specifically say that the right to payment and the obligation to make payment is due and payable 45 days after the end of the reporting period. If you were to write a decision that way, I think there's a textual support in the license agreement based on the due and payable language in both 4.5 and 4.6. Judge Lentz, I think you're muted. Okay, your opponent has reserved rebuttal time. We'll hear from him now and thereafter we will take an eight-minute break. Thank you, Judge. Attorney Nash, please mute your audio and video. Attorney Steiner, please unmute your audio and video and proceed with your two minutes of rebuttal. Thank you. The question is, was there a right by promise that was made? And there certainly wasn't a promise of future payment. Yes, there was a promise. It wasn't a promise. I think the bankruptcy analogy is that the FCH and the DFCI had a vested right to payment for testing royalties and sub-license royalties that had been received. There was an expectation of payment. And because there was an expectation of payment, there was certainly a release of the right. The contention that somehow this would require royalties to be paid differently. It would require a carve-out in the release for exactly what the FCH and MGH claim Let me ask you about that. Suppose the license agreement was clear that the effective date for payment was a conditioned precedent of the license agreement of the requirement to pay. Then the release argument you're making doesn't seem to me to work very well. So it seems to me the whole case turns on whether it's a conditioned precedent. I think the answer to that question is helpful in 10.7 which makes clear it is not a conditioned precedent. If you look at the language of 4.5 and 4.6 which talk about how the liability accrues. It accrues for sub-license royalties upon a payment by a sub-licensee. It accrues in the case of EGL that they invoice. Is there anything in Massachusetts law you're aware of about the standard way in which a conditioned precedent has to be expressed for it to be a conditioned precedent? What I would say, Your Honor, is to look at the broad Massachusetts law as it relates to incorporating and interpreting releases which says you don't need to do what Your Honor has suggested would have to be done under perhaps different state laws. Judge Lynch, you're muted. Can you hear me now? Yes. We'll take the matter under advisement. Thank you. Thank you, Your Honor. This concludes argument in this case. Attorney Steiner and Attorney Nash would disconnect from the hearing at this time. The court will now take